UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMILY T.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | CASE NO. 2:19-cv-01732-BAT<br><br>**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff appeals the ALJ's decision finding her not disabled. She contends the ALJ erroneously found she engaged in substantial gainful activity after her alleged onset date, and misevaluated the opinions of Kristin Conn, M.D., David Zacharias, M.D., and her testimony. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.   Substantial Gainful Work Activity**

The ALJ found plaintiff alleged disability beginning December 24, 2015, but engaged in substantial gainful work activity (SGA) until May 2016 because she earned $24,459.07 in 2016 . Tr. 12. The record shows plaintiff worked for Honda Auto Center of Bellevue from 2014 to May 2016. TR. 195. SGA is work done for pay that involves significant mental or physical activities.

1  20 C.F.R. §§ 404.1571–404.1572 & 416.971–416.975. To determine whether a particular job is

2  SGA, the Social Security regulations consider two employment categories: employee and self

3  employed. See 20 C.F.R. §§ 404.1574; 404.1575; 416.974 & 416.975. For employees, such as

4  plaintiff, the primary factor in determining whether a job is substantial gainful activity "will be

5  the earnings [the employee] derive[d] from the work activity." *Id*. at §§ 404.1574(a)(1) &

6  416.974(a)(1).

7  There is a rebuttable presumption an employee either was or was not engaged in

8  substantial gainful activity if the employee's average monthly earnings are above or below a

9  certain amount established by the Commissioner's Earnings Guidelines. *See id*. at §§

10  404.1574(b)(2)-(3) & 416.974(b)(2)-(3); *see also Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir.

11  2001) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial

12  gainful activity."). Here, as a Honda employee, plaintiff earned from December 24, 2015 to May

13  2016 over $24,000. Plaintiff's work is presumptively SGA because she earned more than $500

14  per month on average over this five month period. *See* 20 C.F.R. § 1574(b) (2011).

15  Because plaintiff's work at Honda is presumptively SGA, she has the burden of

16  producing evidence she did not engage in SGA. The regulations list five factors to consider: the

17  nature of the claimant's work, how well the claimant does the work, if the work is done under

18  special conditions, if the claimant is self-employed, and the amount of time the claimant spends

19  at work. 20 C.F.R. §§ 404.1573 & 416.973. *See Katz v. Secretary of Health and Human Servs*.,

20  972 F.2d 290, 293 (9th Cir.1992) (citing regulations and listing these as factors that claimant

21  could use to overcome high-earnings presumption).

22  Plaintiff contends she has overcome the presumption that her work at Honda is SGA

23  arguing her employer allowed her to work remotely, granted her accomodations no other

1  employee was offered, and her earnings were subsidized and thus are not earnings for purposes

2  of determining SGA. Dkt. 9 at 4-5. The arguments fail.

3       First, plaintiff worked for Honda as a liason between the sales and service department.

4  Tr. 52. Honda allowed her to work remotely from her home or from Mexico where she felt the

5  tropical weather was better for her health. Tr. 60-61. Plaintiff, however, must show her "work

6  environment was the equivalent of a sheltered workshop" for an accomodation to render the

7  work non-SGA. *Katz v. Secretary of Health and Human Serv.*, 972 F.2d at 294. Here there is no

8  indication plaintiff was working in a special or sheltered work environment. Rather it appears

9  she performed work independently from a foreign country and generated a substantial income.

10      Plaintiff's SGA is not unlike the SGA of the claimant in *Katz* who returned to part-time

11 work with reduced hours, making a weekly tea, sorting mail, taking care of three bulletin boards,

12 supplying the student lounge, caring for the xerox machine, and preparing charts for

13 astronomical observations. *Id.* at 293. The Court of Appeals found Katz's reduction in work

14 hours did not constitute a special work environment rebutting the ALJ's finding of SGA. Rather

15 the Court of Appeals indicated *Katz's* case was similar to other decisions rejecting the claim a

16 special work environment existing citing *Garnett v. Sullivan*, 905 F.2d 778 (4th Cir.1990) (work

17 as a bus driver involving minimal time per day typical of bus driving positions and SGA);

18 *Wright v. Sullivan*, 900 F.2d 675 (3d Cir.1990) (work as rape counselor in very flexible

19 circumstances SGA); *Beasley v. Califano*, 608 F.2d 1162 (8th Cir.1979) (despite limits and

20 difficulty, part-time work as a real estate broker SGA).

21      Second, plaintiff's claim her salary was subsidized lacks support. There is nothing

22 showing Honda was subsidizing plaintiff's wages, i.e. paying plaintiff more than the reasonable

23 value of her services as plaintiff suggests. Dkt. 9 at 6. The letter submitted by Honda's general

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

1  manager makes this clear. The letter contains nothing indicating Honda paid plaintiff from
2  December 24 2015 to May 2016 more than the value of her service. Tr. 288. Plaintiff contends
3  the Honda general manager's letters establishes plaintiff worked with limitations. Dkt. 9 at 7.
4  The letter states plaintiff's pain and fatigue took a toll on her because she was by nature
5  energetic and helpful but the letter does not state plaintiff did not perform work or that she was
6  paid for more than the value of her service. Rather the letter can be reasonably read as indicating
7  plaintiff performed SGA until May 2016 when plaintiff "left Honda Auto Center as she could not
8  predict when she would be able to work and when she could not." Tr. 288.

9  The Court accordingly affirms the ALJ's determination that plaintiff engaged in SGA
10 until May 2016.

11 **B.   Medical Opinions**

12   *1.   Kristin Conn, M.D*.

13 The ALJ erred in discounting the opinions of treating doctor Kristin Conn, M.D. The ALJ
14 first found Dr. Conn's reports are well documented but rejected her opinions based on "new
15 evidence." Tr. 30. Plaintiff contends there is no "new evidence," Dkt. 9 at 9, and the
16 Commissioner cites to nothing in the record showing otherwise. Accordingly substantial
17 evidence does not support the ALJ's rationale. The ALJ also rejected Dr. Conn's opinion
18 because "the claimant was able to partake in some daily activities of daily living." Tr. 30. The
19 ALJ is required to provide a specific and legitimate reason. The ALJ's rationale however is an
20 impermissibly vague and conclusory assertion and therefore invalid.

21 The ALJ's erroneous treatment of Dr. Conn's opinions is not harmless because the ALJ's
22 residual functional capacity determination does not address or account for all of the limiations

23

Dr. Conn assessed. The Court accordingly reverses the ALJ's assessment of Dr. Conn's opinions.

### 2.     David Zacharias, M.D.

The ALJ erred in discounting the opinions of examining doctor David Zacharias, M.D. who performed a psychiatric evaluation of plaintiff. First the ALJ found Dr. Zacharias did not perform objective testing, and relied too heavily upon plaintiff's statements. But the ALJ did not identify a test that should have been performed and may not reject a psychiatric evaluation simply because of the apparent subjective nature of the report and the examining doctor's reliance on a patient's self reports. *See e.g. Buck v. Berryhill*, 869 F3d 1040 (9th Cir. 2017).

Further Dr. Zacharias found no evidence of malingering, Tr. 469, and it cannot be said he simply parroted back plaintiff's complaints in arriving at his opinions. Rather the doctor made clinical observations such as "claimant appear to have a lot of difficulty with concentrating, took a lot of time to answer the questions, asked a lot of clarifying questions, appeared particularly anxious and distressed during this part of the interview." Tr. 468. The ALJ accordingly erred. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ errs in rejecting medical opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations.).

Second, the ALJ rejected Dr. Zacharias's opinions as inconsistent with plaintiff's testimony about her activities and the evidence of record. As noted above conclusory statements are invalid. *See e.g. Embrey v. Bowen*, 849 F.2d 418 (9th Cir.1988) (conclusory reasons are not grounds to reject a medical opinion). Additionally plaintiff testified that she spends of her time "feeling sad and depressed I can't do anything," which is not inconsistent with Dr. Zachiarias's opinion.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

1    And third the ALJ rejected the doctor's opinion because plaintiff has not frequently gone
2 to the emergency room or had extended psychiatric hospitalizations. Dr. Zachiarias did not opine
3 plaintiff needed to be whisked away to the emergency room or should be institutionalized. Hence
4 the ALJ's rationale is invalid and unreasonable. The Court accordingly concludes the ALJ erred.
5 The error is harmful because the RFC determination fails to account for all limitations assessed
6 by Dr. Zachiarias.

7 **C.    Plaintiff's Testimony**

8    The ALJ rejected plaintiff's testimony for several reasons. The ALJ found it inconsistent
9 with the medical evidence. This ground cannot stand because the ALJ erred in rejecting the
10 opinions or Drs. Conn and Zachiarias—two key parts of the medical evidence. The ALJ also
11 rejected plaintiff's testimony because she traveled to Mexico and worked after the alleged onset
12 date. Plaintiff did not say she could not fly to Mexicio and as the ALJ noted, plaintiff travels to
13 Mexico because she feels warmer weather her medical condition. Her travel thus does not
14 contradict her testimony. As to the work after December 24, 2015, that may affect the alleged
15 onset date but is not grounds to reject plaintiff's testimony in toto. The ALJ also rejected
16 plaintiff's testimony based upon his observations of her at the hearing. Tr. 18. But the "sit and
17 squirm" jurisprudence "has been condemned," *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir.
18 1985) (citation omitted), and "[d]enial of benefits cannot be based on the ALJ's observation of
19 [Plaintiff], when [Plaintiff]'s statements to the contrary [] are supported by objective evidence."
20 *Id*. (citing *Coats v. Heckler*, 733 F.2d 1338, 1341 (9th Cir. 1984)).

21    The Court also notes the ALJ rejected plaintiff's testimony about numbness and tingling
22 because there were no test results substantiating her complants or tests establishing disorders that
23 might cause the complaints. Tr. 18-19. The ALJ's focus is misplaced because plaintiff testified

the problems limiting her work were fatigue, pain from fibromyalgia and her mental health problems, not tingling or numbness. The Court accordingly concludes the ALJ erred in rejecting plaintiff's testimonhy about her limitations.

## CONCLUSION

For the reasons above the case must be remanded. Plaintiff contends the Court should remand for an award of benefits. However, the Court finds further proceedings would be beneficial to assess the weight of the medical evidence of record following the ALJ's reevaluation of the opinions of Drs. Conn and Zachiarias and plaintiff's testimony. The Court accordingly **REVERSES** the Commissioner's final decision **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reevaluate the opinions of Drs. Conn and Zachiarias and plaintiff's testimony; develop the record and reassess plaintiff's RFC as needed and continue to the remaining steps as appropriate.

DATED this 23rd day of April, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge